**SECURITIES AND EXCHANGE COMMISSION, Plaintiff,**

v.

**John H. CLIFTON, Defendant.**

**Civ. A. No. 76–0225.**

United States District Court, District of Columbia.

March 3, 1982.

Benjamin Greenspoon, Neil Lang, Washington, D. C., for plaintiff.

David M. Barrett, Joseph Schuler, Washington, D. C., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW OF UNITED STATES DISTRICT JUDGE CHARLES R. RICHEY

CHARLES R. RICHEY, District Judge.

The Court has before it the defendant's request to dissolve or amend the Order of this Court entered on February 6, 1976 ("Order") and plaintiff's opposition thereto. Defendant seeks to remove the prospective application of the Order which prohibits him from further violations of certain provisions of the Securities Act of 1933 and the Securities Exchange Act of 1934. Upon consideration of the testimony and exhibits received into evidence, the memoranda filed by the parties, including the affidavits and the depositions, and the entire record herein, the Court hereby makes the following findings of fact and conclusions of law.

### FINDINGS OF FACT

1. On February 6, 1976, the plaintiff filed a complaint alleging that in 1970 and 1974, John H. Clifton had filed with the Securities and Exchange Commission and disseminated to investors two misleading registration statements for the sale of limited partnership interests in oil and gas exploration and development programs of which Clifton was to be the General Partner. The Commission alleged that in 1973 (the J. C. Oil, Ltd., program) and 1974 (the J. C. Oil, Ltd.—1974 program), while the respective filings were in registration or were still being sold, Clifton had acquired interests in oil prospects on behalf of the partnerships, contrary to the terms of the offerings. The Commission also alleged that Clifton had withdrawn investments by himself and his wife in J. C. Oil, Ltd. prior to commencement of the partnership.

2. The Commission alleged that the failure to inform investors of these actions constituted a material misrepresentation. The Commission further alleged that the tax advantages of J. C. Oil, Ltd.—1974 had been misrepresented in that certain drilling costs for wells drilled prior to commencement of the partnership could not be claimed as partnership deductions, but this was not revealed in the offering. These various misrepresentations or omissions were alleged to have violated Section 10(b) of the Securities Exchange Act of 1934, and regulations 10(b)(5) and 10(b)(9) promulgated thereunder, and Section 17(a) of the Securities Act of 1933.

3. The allegations of the Complaint were reviewed and negotiated by Clifton's counsel prior to its filing.

4. Clifton consented to the entry of an Order which, with the exception of jurisdictional questions, constituted neither an admission nor denial of the allegations of the Complaint. This Court, without a hearing, entered a final Order on February 6, 1976, based upon Clifton's stipulation of consent. Among other things, the order prohibited Clifton from violating the securities acts and gave this Court continuing jurisdiction over the case for purposes of enforcing or modifying the decree. In addition, the Order directed Clifton to reimburse J. C. Oil Ltd.—1974 in the amount of $4,000.00.

5. The Commission, pursuant to the stipulation of settlement waived its rights to findings of fact and conclusions of law and its right to take administrative action

against Clifton in connection with his registration as a broker-dealer other than delaying its effectiveness for 60 days.

6. Clifton has had no formal training in oil and gas exploration. From December 1955 until August 1965, Clifton was employed as an adjuster by Hopkins-Lewis Company, public insurance adjusters. Thereafter, he became involved in acquiring interests as a private investor in oil and gas properties. He was the general partner, principal executive officer, principal financial officer and principal accounting officer for J. C. Oil Ltd. and J. C. Oil Ltd.—1974, the only two oil and gas limited partnerships which Clifton has been able to fund.

7. Clifton claims that the existence of the 1976 Order to which he consented has caused him difficulties in marketing oil and gas limited partnerships similar to J. C. Oil Ltd. and J. C. Oil—1974.

8. As general partner, chief operating officer, chief financial officer and chief accounting officer of the limited partnerships, Clifton knew, or should have known all of the operative facts pertaining to his activities relating to such partnerships and there is no allegation of mistake sufficient to warrant consideration by this Court.

9. Clifton's net worth has risen dramatically since the time of the Order.[1] Since 1973, Mr. Clifton's income has risen as follows:

| Date | Net Worth | | |
|---|---|---|---|
| April 9, 1973 | $ 273,672.00 | Pl. | Ex. 30 |
| April 1, 1976 | 373,000.00 | Def. | Ex. 71 |
| June 1, 1980 | 3,393,460.00 | Pl. | Ex. 29 |
| September 15, 1980 | 3,421,365.00 | Pl. | Ex. 28 |
| February 15, 1981 | 4,204,605.00 | Pl. | Ex. 27 |

10. Investors in Clifton's prior programs were dissatisfied with the results and have chosen not to invest with Clifton.

11. There are reasons other than the Order which would cause investors not to invest in oil and gas limited partnerships in which Clifton is the general partner.[2]

Among the reasons are:

a) poor operating results of Clifton's prior programs;

b) Clifton's lack of training and experience in the oil and gas business;

c) dissatisfaction of prior investors with Clifton's programs;

d) failure to communicate tax information to prior investors on a timely basis;

e) change of circumstances on the part of former investors;

f) failure of Clifton to provide annual audited financial statements as required by the limited partnership agreements;

g) the fact that Clifton decided to charge a 7% commission in addition to fees previously charged; and

1. The defendant presented a November, 1981 (Def. Ex. 63) financial statement on the morning of trial in which he reports a net worth of only $590,480.00. This represents a decrease in his net worth of over $3,600,000.00 in only nine months. While the defendant attempted to justify the decrease by changes in accounting procedures, the Court notes that such a decrease is the result of bad business acumen. This presupposes that the defendant's previous statements were accurate. After all, isn't there a basic principle of business to buy low and sell high. Yet the defendant, who wants others to rely upon his business judgment losses over *$3.6 million* in only nine months.

2. Moreover, the Court notes that the only language contained in the 1976 program which might constitute any undue or unforseen hardship merely provides as follows:

In July, 1975, the Securities and Exchange Commission ("SEC") commenced an investigation of Mr. Clifton's activities with respect to JC Oil, Ltd. and JC Oil, Ltd.—1974. Mr. Clifton cooperated fully with the SEC's investigation. On February 6, 1976 the SEC filed a complaint against Mr. Clifton requesting that he be enjoined from violating various provisions of the Federal securities law as a result of the above described activities and others pertaining to the initial organization of JC Oil, Ltd. The complaint was filed simultaneously with a stipulation whereby Mr. Clifton, without admitting or denying the allegations in the complaint, consented to the entry of a court order directing him not to violate the Federal securities laws. In addition, Mr. Clifton consented to an immediate suspension from association with any broker dealer for a period of 60 days.
JC Oil 1976 Program at 18.

h) other factors making Clifton's oil and gas venture investments of high risk.

12. The Court finds that the existence of the Order *is not a bar to any activities contemplated by Clifton* and provides positive protections for future investors in Clifton's ventures. Moreover, Mr. Clifton is not barred from pursuing *any* venture, as is so often the case with consent decrees.

## CONCLUSIONS OF LAW

 The standard for determining whether or not an injunctive decree should be lifted or dissolved is "a clear showing of grievous wrong evoked by new and unforseen conditions." *United States v. Swift & Co.*, 286 U.S. 106, 119, 52 S.Ct. 460, 463, 76 L.Ed. 999 (1932). Based upon this Court's findings of fact, Clifton has not made such a showing. Indeed, Clifton has not been forestalled from doing anything as the defendants in *Swift* were. Rather, Clifton was ordered merely to do what every one else must do, that is, to obey the securities law. To be told to do what the law requires to be done is no such hardship to require dissolving or modifying the Consent Decree. *SEC v. Bausch & Lomb, Inc.*, 82 F.R.D. 50, 53 (S.D.N.Y.1979). The fact that the defendant, Clifton, was unable to sell his 1976 program is not enough to establish a grievous wrong, thus necessitating any Court action.

The defendant attempted to prove the grievous wrong and undue hardship through the testimony of his wife (Def. Ex. 81). Yet, the fact of the matter is that Clifton's net worth grew from $273,672.00 in 1973 to $4,204,605.00 in February of 1981.[3] Mrs. Clifton testified that during the winter of 1978, there was an attempt to repossess their car, as well as threats to turn off their home utilities. (Def. Ex. 81 at 26–29). However, Mr. Clifton's financial statement of September 1, 1978 showed a net worth of $1,024,754.00 (Pl. Dec. 8, 1981 submission at 4) and was ever increasing. The Court is unable to find a grievous wrong in this situation.

The testimony of Mr. Clifton's investors likewise fails to demonstrate a grievous wrong. Mr. Joseph S. Bond, who had invested in the defendant's earlier programs testified that the reason he did not invest in the 1976 program was:

A: Because Johnny had made me aware of a Court order that *I interpreted as barring him from doing business* that related to the earlier SEC concern over the '73 and perhaps the '74 program. I don't know. (Emphasis supplied).

Q: Did you ever see the court order?

A: I can't say that I did for certain, but I believe that I saw the court order in Johnny's office.

Def's Ex. at 28, *see also* Def's Ex. 66 and Dec. 1, 1981 Tr. at 136.

The Court notes that this interpretation was clearly wrong. As spelled out in the '76 prospectus, all that Clifton had to do was obey the law. (Def's Ex. 66 at 18 and footnote 2, *supra*). Moreover, on cross examination, Mr. Bond voiced his displeasure at both the '73 and '74 programs, as well as the fact that he started receiving very little information about both of the programs. (Tr. at 143–4).

Mr. Leroy Lacky, another investor in both the '73 and '74 programs voiced a similar displeasure in both programs wherein he testified that:

Sometime in late 1978 or early 1979, a group of 1973 investors was formed due to the dissatisfaction on the part of investors with the income generated by that program and the lack of information which was being provided to the limited partners by Mr. Clifton.

At a meeting of limited partners we discussed the possibility of having Mr. Clifton removed as general partner. We also discussed problems involving Mr. Clifton's allocations of overhead between his personal business and the partnership and the method used by Mr. Clifton in

---

3. The Court notes that the plaintiff's original motion to dissolve or amend the final order was filed on January 26, 1981, more than two weeks before his February 15, 1981, financial statement which showed a net worth of $4,204,605.00.

determining his right as general partner to payments regarding certain wells.

In addition, we have not received audited financial statements, as required by the partnership agreements, for at least three years, and our tax information comes late and not necessarily on the appropriate forms.

(Dec. 2, 1981 Tr. at 243–4).

This dissatisfaction was also echoed by another investor, Mr. A. Willis Robertson, Jr. who testified that the reason that he did not reinvest with Mr. Clifton was due to the poor performance of the '73 program and not because of the consent decree, of which he was aware. (Robertson deposition at 8, 9).

From the testimony, it is apparent to the Court that the existence of the consent decree had no bearing on Mr. Clifton's ability to conduct his business affairs. Mr. Clifton is in a very competitive field where participants seek not only a return on their investment, but a tax shelter as well.[4] This Mr. Clifton was unable to provide. It is even more apparent when the Court takes into consideration that many of the investors were friends of Mr. Clifton, yet refused to reinvest. Not because of the consent decree, but because of poor results.

Accordingly based on the foregoing, the Court finds that there has been no grievous wrong which would mandate dissolving the 1976 consent decree. Further, the Court notes that it would reach the same result even if it were to follow the less stringent standard set forth in the *SEC v. Warren*, 583 F.2d 115 (1978).

An order in accordance with the foregoing shall be issued of even date herewith.

---

4. Testimony from the investors expressed dissatisfaction at receiving their tax information late as well as it being done on the wrong forms. (Testimony of Mr. Leroy Lacky, *supra*.)